IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ERIC Z. ANDERSON,

        Plaintiff,                     No. 2:11-cv-2744 JAM AC P

    vs.

WARDEN MIKE McDONALD,

        Defendant.               FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff, a state prisoner, proceeds pro se and in forma puaperis on his complaint for relief filed pursuant to 42 U.S.C. § 1983. Plaintiff alleges that he was placed in administrative segregation at High Desert State Prison for 24 months solely because of his racial classification as a Northern Hispanic. Plaintiff seeks money damages as well as "a law against race based lockdowns . . . ."

        Defendant has moved to dismiss the complaint, for failure to exhaust and for failure to state a claim upon which relief can be granted. Plaintiff opposes the motion. For the reasons given below, the undersigned recommends that defendant's motion to dismiss the complaint for failure to exhaust be granted, and that this action be dismissed with prejudice.

////

Background

Plaintiff was transferred to High Desert State Prison ("HDSP") on August 22, 2009. See Doc. No. 1 at 3. Defendant Mike McDonald was the warden at HDSP. See Doc. No. 1 at 2. Upon arrival at HDSP, plaintiff was placed on lockdown because of his racial classification as a Northern Hispanic. Id. Plaintiff remained on lockdown for twenty-four months. See id. at 5-6.

Plaintiff claims that during this time

> I continued to file grievances and sign on group grievances with other inmates and was always denied! I signed multiple unlock chronos and told as well as signed multiple papers stating I had no problems with any inmates I had no knowledge of any problems with any inmates. And I would come out and program respectfully with no problems if afforded the opportunity. Yet I was never allowed to program. . . .
>
> I could not step out of my cell without shackles and my hands cuffed behind my back. If I wanted to take a shower my hands would be cuffed behind my back I would be escorted to the shower and locked in the shower. For 24 months I was either in restraints or locked in a confined space every minute of every day no fresh air no outdoor exercise no phone no contact visits. . . .

Doc. No. 1 at 5-6.

According to plaintiff, he sent out his only copies of his grievances to his family along with a lawsuit. Id. at 7. He claims that after he turned the lawsuit into the mailroom, it was never seen again. Id.

**Defendant's Motion to Dismiss**

Defendant McDonald moves to dismiss the complaint, arguing that (1) plaintiff has failed to exhaust his administrative remedies, as he is required to do under 42 U.S.C. § 1997e(a), and (2) plaintiff fails to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

*Exhaustion*

Relevant Authority

Congress "placed a series of controls on prisoner suits, constraints designed to

prevent sportive filings in federal court." Skinner v. Switzer, __ U.S. __, 131 S.Ct. 1289, 1299 (2011). One of these constraints is the mandatory exhaustion of the correctional facilities' administrative remedies. See 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

Exhaustion serves two purposes. Woodford v. Ngo, 548 U.S. 81, 89 (2006). First, exhaustion protects administrative agency authority. Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures. Second, exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. Id. (internal quotation marks, alteration, and citations omitted).

The Prison Litigation Reform Act of 1995 (PLRA) mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Although "the PLRA's exhaustion requirement applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA is not absolute. See Albino v. Baca, 697 F.3d 1023, 1030-31 (9th Cir. 2012). As explicitly stated in the PLRA, "[t]he PLRA requires that an inmate exhaust only those administrative remedies 'as are available.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."). "We have recognized that the PLRA therefore does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'" Sapp, 623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff,

422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." (alteration in original)).

Exhaustion, under the PLRA, is an affirmative defense. Jones, 549 U.S. at 216. Because exhaustion under the PLRA is an affirmative defense, "[t]he burden of establishing nonexhaustion therefore falls on defendants." Wyatt, 315 F.3d 1108, 1112 (9th Cir. 2003); accord Brown, 422 F.3d at 936 ("[D]efendants have the burden of raising and proving the absence of exhaustion.") (quoting Wyatt, 315 F.3d at 1119) (internal quotation marks omitted). Once the defense meets its burden, the burden shifts to the plaintiff to show that the administrative remedies were unavailable. See Albino, 697 F.3d at 1030-31; Hilao v. Estate of Marcos, 103 F.3d 767, 778 n. 5 (9th Cir. 1996).

A defendant's burden of establishing an inmate's failure to exhaust is very low. See Albino, 697 F.3d at 1031. A defendant need only show the existence of remedies that the plaintiff did not use. Id. Relevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process. Id. at 1032.

The relevant regulations in effect in 2010 and 2011 required that an inmate present his or her allegations initially at a first and second level of appeal. Cal. Code Regs. tit. 15, § 3084.7(a)-(b). If dissatisfied, the inmate was generally required to appeal to a third-level of appeal. Id. at § 3084.7(c). A decision at the third level constituted the decision of the Secretary of the California Department of Corrections and Rehabilitation ("CDCR") and generally exhausts administrative remedies. Id. However, an appeal could be screened out and rejected or cancelled at any level if it failed to comply with Title 15's requirements. See Cal. Code Regs. tit. 15, §§ 3084.6(b)-(c). For example, CDCR's regulations require the inmate to describe the specific issue under appeal, submit one issue per appeal, list all staff members involved, and

4

state all the facts available to the inmate when the appeal was submitted. See Cal. Code Regs. tit. 15, §§ 3084.2(a)(1)-(4). Also, the inmate had to file the appeal timely, within either 15 or 30 days after the alleged incident. See Cal. Code Regs. tit. 15, §§ 3084.6(c), 3084.8(b)(1) (30 day time limit effective Jan. 28, 2011). Failure to comply with such rules constitutes a failure to exhaust. See Woodford, 548 U.S. at 84, 90-91 (exhaustion requires compliance with deadlines and procedural rules applicable to administrative appeals).

Once a defendant makes a showing of remedies which have not been exhausted, the burden shifts to the plaintiff to rebut by showing that the administrative remedies were unavailable within the meaning of the PLRA. See Albino, 697 F.3d at 1032-33.

Affirmative actions by jail or prison staff preventing proper exhaustion, even if done innocently, can make administrative remedies effectively unavailable. Id. at 1034. For example, improper screening of an inmate's administrative grievances renders administrative remedies effectively unavailable such that exhaustion is not required under the PLRA. Sapp, 623 F.3d at 823. To fall within this exception, a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening. Id. See also Nunez, 591 F.3d 1217 (inmate's untimely exhaustion excused where inmate took "reasonable and appropriate steps to exhaust . . . and was precluded from exhausting . . . by the Warden's mistake"). Where a complaint is screened out by *proper* application of the rules, however, this exception does not apply. See Woodford, 548 U.S. at 84, 90-91.

In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20. No presumption of truthfulness attaches to a plaintiff's assertions associated with the exhaustion requirement. See Ritza v. Int'l Longshoremen's and Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988). If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is generally dismissal of the claim without prejudice. Id.

Defendant's Evidence

According to the inmate appeals coordinator at HDSP, all inmate appeals that are received at HDSP are time stamped the day they are received. See Doc. No. 23-1, Declaration of D. Clark, dated August 8, 2012 ("Suppl. Clark Decl."), ¶ 4. Typically, all inmate appeals are entered into the electronic database on the day they are received. Id. Appeals are then screened to determine whether they comply with the sections of title 15 of the California Code of Regulation governing inmate appeals. Id.

If an appeal does not comply with the appeal regulations it is rejected or cancelled and returned to the inmate with the reason it was rejected and any relevant additional instructions. Id.; see also Doc. No. 15-2, Declaration of D. Clark, dated April 4, 2012 ("Clark Decl."), ¶ 8 (listing reasons for which an appeal may be rejected under former § 3084.6(b)(1)-(15)), ¶ 9 (listing reasons for which an appeal may be cancelled under former § 3084.6(c)(1) - (11)), ¶ 10 (describing procedure upon rejection or cancellation).

If an appeal is accepted it is forwarded to be assigned to an official for response. Id. The appeals coordinator declares that inmate appeals received by the HDSP appeals office are not thrown away, discarded, or ignored. Id.

Defendant has provided evidence that plaintiff submitted two grievance appeals while at HDSP. See Clark Decl., ¶ 13. The first, submitted April 19, 2011, was screened out for, among other things, failure to provide the necessary supporting documentation. Clark Decl., ¶ 14. Plaintiff re-submitted the appeal on May 18, 2011, and the appeal was cancelled because, according to defendant, plaintiff failed to follow instructions and properly complete the appeal. Id.

Plaintiff's submitted his second grievance on May 20, 2011. Clark Decl., ¶ 15; Doc. No. 16 at 7-9. In this second appeal, plaintiff alleged that he had been confined to his cell "24/7" for the 22 months he had been at HDSP based on his racial classification. See Doc. No. 16 at 8-9. He also complained that, among other things, he had been denied a legal call with his

6

appellate attorney, that his vents were dirty, that he had not received a laundry exchange, and that he has had no outdoor exercise. Non-party T. Robertson, Appeals Coordinator, screened out the appeal because it appealed multiple unrelated issues in violation of California Code of Regulations, Title 15, § 3084.6(c)(8). See Doc. No. 16 at 7; Clark Decl. ¶ 15. T. Robertson instructed plaintiff to submit a separate appeal for each issue, but plaintiff did not submit any subsequent appeals. Id.

According to prison officials, plaintiff: (1) did not prepare or submit any group appeals on behalf of any other inmates while he was at HDSP (Clark. Decl. ¶ 16); (2) did not submit any appeals that were accepted for review at the first or second levels of appeal while he was at HDSP (Clark. Decl. ¶ 17); (3) did not submit any inmate healthcare appeals for review while he was at HDSP (Doc. 15-3, Declaration of D. Frazier dated April 9, 2012 ("Frazier Decl."), ¶ 6); and (4) did not sign on to any of the group appeals addressing the lockdown program during the time he was housed at HDSP (Suppl. Clark Decl. ¶ 10).

Defendant argues that, even if plaintiff's two appeals had been properly submitted, the appeals would have been untimely under Title 15, as they were not submitted within 15 days after the constitutional violations allegedly began on August 22, 2009. See Doc. No. 15-1 at 13. Defendants argue that it would now be impossible for plaintiff to exhaust his claims, as he was transferred out of HDSP before he filed his complaint, and the current regulations require plaintiff to file an appeal within 30 days of any alleged violation. Id. Defendant accordingly seeks to dismiss the complaint with prejudice, since plaintiff cannot cure this defect. Id.

Plaintiff's Evidence

Plaintiff opposes the motion, and in his opposition includes a copy of his May 18, 2011 appeal as well as CDCR's May 20, 2011 rejection. Doc. No. 16 at 7-9. Plaintiff also asks the court to "take note of all other copies of prior 602s petitioner sent out with his first law suit which never made it out of H.D.S.P. mail room." See id. at 1-2. No copies of such documents

7

1  are provided, nor does plaintiff provide the dates or description of the specific contents of such
2  documents.  Plaintiff also alleges that he signed onto a group appeal in early 2011 submitted by
3  an inmate named Paul Ramirez, which group appeal plaintiff claims was exhausted.  See Doc.
4  No. 16 at 2, 5.  No documentation related to the Ramirez appeal is provided.

5     Plaintiff claims that he tried to use the grievance process to the best of his ability,
6  but that it is "broken" and that he had no experience with such forms and no "open opportunity"
7  to communicate with inmates who did have the experience.  Id.

8     Also attached to plaintiff's opposition are seven "Unlock Agreement" forms
9  signed by plaintiff, and dated various dates from January 2010 through June 2011 (three are
10 undated).  See Doc. No. 16 at 11-17.[1]

11    In response to the court's July 12, 2012 order, issued to comply with Woods v.
12 Carey, 684 F.3d 934 (9th Cir. 2012), plaintiff has submitted a supplement to the opposition.  See
13 Doc. No. 20.  The supplement includes declarations from four individuals also housed at HDSP
14 while plaintiff was on lockdown.  See id.  The gist of the declarations is that the declarants either
15 saw plaintiff attempt to appeal his lockdown status, or themselves tried to appeal.  In response,
16 they claim in general terms that prison staff failed to respond to the appeals, threw them away, or
17 returned them to the inmates to re-do.[2]

18    Jose Cruz Gonzalez declares:

19> I personally witnessed Mr. Anderson sign unlock chronos and request to go to yard.  I also sighned [sic] on group 602 with plaintiff and other
20> Northern Hispanics inmates in our block "C-2" that were never even responded too! . . . [N]o one ever responded to our 602 H.D.S.P. locked us

---

[1] "Unlock Agreements" are signed by inmates who are selected for release after institutional lockdowns precipitated by racial incidents or tensions among inmate factions.  The inmate to be "unlocked" agrees to participate in the incremental unlock process and disavows any intention to participate in violence, and affirms the intention to program positively.

[2] Defendant has filed particularized objections to the witness statements.  Doc. No. 24.  As discussed below, the court makes no determination about the credibility of the witnesses, because, taking their statements as true, plaintiff's allegations are insufficient to meet his burden.  Defendant's objections are accordingly overruled.

> down and threw away the key. . . . I personally attempted to get off of the racial discriminated lockdown as did I personally witness Mr. Anderson attempt to do the same to no avail our 602 were either thrown away by administration and or denied. . . . All in all plaintiff as well as other Northern Hispanics at H.D.S.P. did attempt to exhaust administrative remedies yet H.D.S.P. administration made it next to impossible by throwing them away and or just not answering them or sending them back telling us we had to re-due [sic] them. . . .

Doc. No. 20 at 10-11.

Victor Calderon declares:

> I was escorted from R&R to a cell . . . next door to Mr. Anderson. He explained that the Northern Hispanics were having problems with the 602 process but would be submitting a group 602 again at which time I could sighn [sic] on. Which within a month or so one was passed around via: Mr. Paul Ramirez # V. And I sighned [sic] on. Meanwhile I witnessed Mr. Anderson sighn [sic] unlock chronos to attempt to get off lockdown. As well as within my stay I seen Mr. Anderson submitt [sic] 602s and get so frustrated for getting rejected for minor reasons or not even get a response I know he sent his lawsuit out right before we left and it was never sent out of High Desert. . . . From the time I arrived to H.D.S.P. I witnessed Mr. Anderson sighn [sic] unlock chronos to attempt to get off lockdown. As well within my stay I seen Mr. Anderson submit 602s and get so frustrated for getting rejected for minor reasons or not even get a responce [sic] I know he sent his law suit right out before we left and it was never sent out of High Desert. . . . From the time I arrived to H.D.S.P. I witnessed Mr. Anderson attempt to utilize H.D.S.P.'s broken 602 process all the way up to a law suit to which administration shut him down in every way he went!

Doc. No. 20 at 13-14.

Mark Anthoney Gonzales declares:

> I seen "Anderson/G-31197" sign multiple unlock chronos willing to program in a positive manner and request to go program as well I (Mark A. Gonzales/V-21618) had also signed mutipal [sic] unlock chronos and 602s with inmate "Anderson/G-31197" and other Northern Hispanics inmates in our "Block C2" that were ignored or thrown away because we never got a response to them/most of them....As we all attempted to get off this racial discrimination lockdown by willing signed multipal [sic] unlock chronos, filing group 602s, to only be ignored or the chronos or 602s were thrown away by administration or denied an made to feel as if we were nothing...."Anderson/G-31197" as well as other Northern Hispanics at H.D.S.P. did in fact attempt to exhaust administrative remedies. But H.D.S.P. administration made it next to impossible because they threw them away and ignored our attempt or just did not answer them or sending them back to be done over. . . .

Doc. No. 20 at 16-17.

9

1   Christopher Marenco declares:

2   > Like numerous others in C-2 fac. I witnessed "Mr. Anderson/G-31197" sign multipal [sic] unlock chronos, fully willing to program in a positive manner and requesting to program. As I myself (Christopher Marenco/G-62892) signed all unlock chronos and 602s with fellow inmate Andersen/G-31197. Which in turn were ignored or discarded because we never received a response for them/most of them. Also filing group 602s. To be ignored or the chronos and 602s thrown away or denied by administration. Thus made to feel as if we were nothing or of no importance. . . . "Anderson/G-31197" as well as other Northern Hispanics at H.D.S.P. did in fact attempt to exhaust administrative remedies. But H.D.S.P. administration made it near impossible because they threw them away and ignored our attempts or just did not answer them or sending them back to be re-done. . . .

9   Doc. No. 20 at 19-20.

10   Analysis

11   Defendant has met his burden of establishing failure to exhaust available administrative remedies. The affidavits of D. Clark, D. Frazier, J.D. Lozano, and L.D. Zamora establish that (1) during his time at HDSP, the only appeals filed by plaintiff were two first-level appeals submitted in 2011, (2) the two appeals were not adjudicated on their merits, and (3) plaintiff did not seek review at any higher level of the 2011 appeals. See Doc. Nos. 15-2, 15-3, 15-4, and 15-5.

Plaintiff does not dispute that he did not file any appeals above the first level review. Plaintiff also does not dispute that his 2011 appeals were properly rejected for non-compliance with procedural requirements. He does, however, appear to seek to excuse compliance by alleging generally that he filed other grievances which were thrown away or ignored by HDSP, or that the grievance system at HDSP is "broken" in general, making it difficult to use. The supporting declarations of other inmates make the same broad allegations. Plaintiff additionally alleges that he (and other inmates) signed onto a group appeal with an inmate named Paul Ramirez, but does not provide a copy of that appeal or any details about its status.

Plaintiff's allegations that other grievances were ignored or destroyed are both

10

factually unsupported and inadequate to demonstrate the unavailability of administrative remedies. Plaintiff has not provided the court with pertinent information about the appeals which he claims were lost with his lawsuit, or about his alleged group appeals, such as when they were filed or precisely what they alleged. Without such information the court cannot conclude that plaintiff had timely filed such appeals, or had otherwise given timely notice to prison officials of the allegedly unconstitutional conditions. See Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) ("when a prison's grievance procedures are silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" ). Such information would also have helped the court to assess plaintiff's diligence, and to determine if plaintiff took reasonable and appropriate steps to exhaust his claim, but was somehow precluded from doing so by a force outside his control. See Nunez, 591 F.3d at 1224.

Plaintiff's generalized allegations that the 602 process is broken, and that the prison administration made exhaustion "near impossible," are vague and conclusory. The declarations of other inmates merely repeat the conclusory characterization of the process as broken, without providing the court with the requisite factual basis on which to determine whether administrative remedies were unavailable. Cf. Sapp, 623 F.3d at 823 (improper screening renders remedies effectively unavailable). Even if plaintiff's evidence was sufficient to demonstrate that inmate grievances were frequently mishandled at HDSP, he has not presented evidence that he attempted to correct the procedural defects with the grievance at issue here, and was thwarted in such efforts by prison authorities. He has therefore failed to rebut defendant's showing of non-exhaustion.

Accordingly, the undersigned recommends that the complaint be dismissed with prejudice. The PLRA requires "[p]roper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90-91. "[F]iling an untimely or otherwise procedurally defective administrative grievance or appeal" does not

1  satisfy the PLRA's exhaustion requirement. Id. at 84.  CDCR's grievance procedures require an
2  inmate to submit an appeal within 30 days of the incident being grieved.  See Cal. Code Regs. tit.
3  15, § 3084.8(b)(1).  Years have passed since the acts alleged in the complaint.  As the time to
4  properly exhaust administrative remedies has long passed, the complaint should be dismissed
5  with prejudice.

### No Evidentiary Hearing is Necessary

7  In this case, the undersigned makes no assessment of plaintiff's credibility, or of
8  that of his witnesses, and so will not conduct an evidentiary hearing.  Cf. Hubbard v. Houghland,
9  471 Fed. Appx. 625 (9th Cir. Mar.7, 2012).  Instead, the undersigned recommends dismissal
10  based on the undisputed facts before the court, including that plaintiff failed to prosecute his
11  administrative remedies through all available levels.  Moreover, as noted above, plaintiff's vague
12  and conclusory allegations, taken as true, are insufficient to meet his burden that administrative
13  remedies were not available to him.

### Defendant's Motion to Strike

15  In response to the court's July 20, 2012 order, the plaintiff provided the court with
16  a supplement to his opposition.  Doc. No. 20.  Defendant objected, and moved to strike those
17  portions of the supplement which supplemented plaintiff's objections to defendant's motion to
18  dismiss for failure to state a claim.  See Doc. No. 22.  Defendant argued that the court had only
19  authorized plaintiff to supplement his exhaustion arguments only.  Id.

20  Because the undersigned recommends dismissing the action for failure to exhaust,
21  the undersigned does not reach the defendant's argument that plaintiff's complaint fails to state a
22  claim.  Accordingly, the undersigned will recommend that the motion to strike be denied as
23  moot.

24  In accordance with the above, IT IS HEREBY RECOMMENDED that

25  1.  Defendant's motion to strike (Doc. No. 22), and plaintiff's "motion to dismiss
26  the evidentiary objections" (Doc. No. 25), be denied as moot;

      2. Defendants' motion to dismiss, filed April 16, 2012 (Doc. No. 15), be granted; and

      3. This action be dismissed with prejudice for failure to exhaust.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-eight (28) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within twenty-eight (28) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 17, 2013.

                         */s/ Allison Claire*
                         ALLISON CLAIRE
                         UNITED STATES MAGISTRATE JUDGE

AC:rb
ande2744.fr